UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

DWAYNE ANDRE BLOUNT,

    Plaintiff,

v.                                             Civil Action No. 3:08cv622

GREENBRIER PONTIAC OLDSMOBILE
– GMC TRUCKS KIA, INC., et al.,

    Defendants.

## MEMORANDUM OPINION

Before the Court is Defendant Hyman Wholesale Corporation's ("Hyman") Motion to Dismiss Dwayne Andre Blount's Second Amended Complaint. (Docket No. 79.) Plaintiff has responded. (Docket No. 106.) The matter is ripe for adjudication. The Court has determined that the parties have adequately presented the facts and legal contentions on the record such that oral argument would not aid the decisional process. *See* Local Civil Rule 7(J). The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, and 636(c). For the reasons stated below, Hyman's Motion to Dismiss will be GRANTED in part and DENIED in part.

### I. Procedural and Factual Background

Plaintiff filed his original Complaint in this court on September 25, 2008. On March 17, 2009, Plaintiff filed his Second Amended Complaint. (Docket No. 70.) A majority of the parties named in the Second Amended Complaint have since been dismissed, and currently, the only two remaining defendants who have been served and are not in default are Hyman and Sullivan Auto Trading, Inc.

The Second Amended Complaint alleges that on September 30, 2005, Plaintiff purchased a 2004 Yukon Denali ("the vehicle") from Greenbrier Pontiac Oldsmobile – GMC Trucks Kia ("Greenbrier"), which later turned out to be stolen.[1] Plaintiff alleges that the sale of the vehicle occurred through the use of a cloned vehicle identification number ("VIN") and the alleged fraud and/or negligence of up to nine automobile dealers ("the Dealers") in falsifying documents and/or failing to title the vehicle properly upon transfer of ownership. (2d Am. Compl. ¶¶ 18-19.) Specifically, he alleges what he terms "the misrepresentations" of the Dealers: "The Purchase Agreement and the odometer disclosure statement, both with inaccurate information, were provided by the Dealers and disclosed actual mileage of 10,990 for the Vehicle bearing VIN 1GKEK63UX4J218176. . . ." (2d Am. Compl. ¶ 25.) Plaintiff alleges that the vehicle's true VIN was 16KEK63J14J321356. (2d Am. Compl. ¶ 24.) Plaintiff's claims as outlined in his Second Amended Complaint rely heavily on the alleged misrepresentations of the Dealers.

Plaintiff brings six counts in his Second Amended Complaint against Hyman, set forth below:

| | |
|---|---|
| Count One: | Violations of the Motor Vehicle Information and Cost Savings Act ("Federal Odometer Act"), 49 U.S.C. § 32701 *et seq.*, as to all Defendants. Plaintiff alleges that the odometer on the vehicle did not accurately reflect the actual miles of the vehicle at the time of sale, the odometer disclosure statement presented to Plaintiff at the time of sale did not accurately reflect the odometer reading, and the odometer disclosure statement presented to Plaintiff contained false information in that it did not accurately identify the VIN for the vehicle actually sold. (2d Am. Compl. ¶¶ 55-58.) |
| Count Two: | Violations of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196 *et seq.*, as to all Defendants. Plaintiff alleges, *inter alia*, that the Dealers' misrepresentations in regard to title to the vehicle, mileage of |

---

[1] The Prince George's County (Maryland) Police Auto Theft Department seized the vehicle on November 15, 2007. (2d Am. Compl. ¶ 37.)

2

|  |  |
|---|---|
|  | the vehicle, VIN of the vehicle, and legal right to sell the vehicle, violated the VCPA. |
| Count Three: | Fraud, as to all Defendants. Plaintiff alleges that the Dealers' "fraudulent statements and misrepresentations induced the Plaintiff to purchase the Vehicle." (2d Am. Compl. ¶ 89.) |
| Count Four: | Constructive fraud, as to all Defendants. Plaintiff alleges as an alternative to Count Three that "the Dealers innocently or negligently misrepresented and/or omitted material facts regarding the purchase, titling and ownership of the Vehicle." (2d Am. Compl. ¶ 96.) |
| Count Seven: | Intentional Infliction of Emotional Distress, as to all Defendants. Plaintiff alleges that the "acts of the Dealers as alleged in this Complaint were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiff and/or were done in reckless disregard of the probability of causing Plaintiff emotional distress, and these acts did in fact result in severe and extreme emotional distress." (2d Am. Compl. ¶ 125.) |
| Count Nine: | Negligence, as to all Defendants. Plaintiff alleges that, in the alternative to his other claims, "the collective actions of the Dealers constitute negligence" that caused Plaintiff actual damages. (2d Am. Compl. ¶¶ 137-38.) |

Hyman moves to dismiss all counts against it on the basis that Plaintiff's allegations do not allege any specific wrongdoing by Hyman. Plaintiff's Second Amended Complaint alleges that on or about September 6, 2005, Sullivan Auto Trading sold or transferred the vehicle to Hyman, and that on or about September 7, 2005, "Hyman failed to title the Vehicle in its name and . . . sold or transferred the Vehicle to Greenbrier." (2d Am. Compl. ¶¶ 17c-17d.)

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

3

1992) (*citing* 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In *Bell Atlantic Corp.*, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than "conceivable." *Id.* In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

A court determines plausibility by undertaking a "context-specific task" drawing on "judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). In doing so, a court may evaluate which allegations are "entitled to the assumption of truth" because they are supported by factual allegations, and which allegations should be treated as legal conclusions. *Id.* at 1950. Only after distinguishing the well-pleaded facts from legal conclusions

may the Court determine which factual allegations support a "plausible claim for relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

Fraud claims are subject to a heightened pleading standard. Federal Rule of Civil Procedure 9(b) requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (*quoting* 5 Wright and Miller, Federal Practice and Procedure § 1297, at 590 (2d ed. 1990)). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Id.* at 783 n.5.

### III. Analysis

#### A. Count One: Federal Odometer Act

Count One alleges violations by the Dealers of the Federal Odometer Act, 49 U.S.C. §§ 32701–32711. Specifically, Plaintiff alleges that the Dealers violated 49 U.S.C. § 32705, which provides:

> **(a)(1) Disclosure Requirements.–** Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:
> (A) Disclosure of the cumulative mileage registered on the odometer.

  **(B)** Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

(2) A person transferring ownership of a motor vehicle may not violate a regulation prescribed under this section or give a false statement to the transferee in making the disclosure required by such a regulation.

(3) A person acquiring a motor vehicle for resale may not accept a written disclosure under this section unless it is complete.

49 U.S.C. § 32705(a). Plaintiff alleges that the Dealers are liable under 49 U.S.C. § 32703(4)[2] for conspiring to violate § 32705. (2d Am. Compl. ¶ 62.) Plaintiff further alleges that the Dealers violated subsections (1), (2), and (3) of § 32705 "by making the misrepresentations" (2d Am. Compl. ¶ 63) and "by acquiring the vehicle for resale with an incomplete and/or inaccurate disclosure" (2d Am. Compl. ¶ 64). Section 32710 provides a civil remedy for violations of the Federal Odometer Act: "A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for 3 times the actual damages or $1,500, whichever is greater." 49 U.S.C. § 32710(a).

The rules promulgated by the Secretary of Transportation pursuant to 49 U.S.C. § 32705, which govern the required disclosures of odometer information under the Federal Odometer Act, are located at 49 C.F.R. § 580.5. "Each title, at the time it is issued to the transferee, must contain the mileage disclosed by the transferor when ownership of the vehicle was transferred. . . ." 49 C.F.R. § 580.5(a). The written mileage disclosure made a part of the title or accompanying a transfer of ownership of a vehicle must include the following information:

 (1) The odometer reading at the time of transfer (not to include tenths of miles);
 (2) The date of transfer;
 (3) The transferor's name and current address;

---

[2] "A person may not . . . conspire to violate this section or section 32704 or 32705 of this title." 49 U.S.C. § 32703(4).

(4) The transferee's name and current address; and
(5) The identity of the vehicle, including its make, model, year, and body type, and its vehicle identification number.

49 C.F.R. § 580.5(c). Here, Plaintiff alleges that the Dealers' odometer disclosure statements "inaccurately and fraudulently identified the Vehicle" in the form of a cloned VIN. (2d Am. Compl. ¶ 21.) Additionally, the Second Amended Complaint states that the "Dealers failed to provide the required disclosure of mileage on the reassignment of title as required by Federal law." (2d Am. Compl. ¶ 61.)

However, technical violations of 49 C.F.R. § 580.5 do not alone "impose strict liability on dealers. . . . Under the [Federal Odometer Act], a dealer is only liable to private persons if the dealer violates [Federal Odometer Act] requirements 'with intent to defraud.'" *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 563, 565 (E.D. Va. 2001) (*quoting* 49 U.S.C. § 32710). Intent to defraud may be shown by actual knowledge of violations of the Federal Odometer Act. *See Mataya v. Behm Motors, Inc.*, 409 F. Supp. 65, 69-70 (E.D. Wis. 1976) (denying defendant's motion to dismiss because complaint could be read to allege that dealer had actual knowledge of odometer tampering, but granting summary judgment to defendant where plaintiff failed to contravene defendant's president's affidavit that neither he nor any employees had actual knowledge of odometer tampering). Intent to defraud may also encompass situations in which "a transferor reasonably should have known that a vehicle's odometer reading was incorrect." *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978); *accord Oettinger v. Lakeview Motors, Inc.*, 675 F. Supp. 1488, 1493 (E.D. Va. 1988).

The Court finds that Plaintiff has alleged Hyman's intent to defraud with specific particularity to proceed with Count One. Plaintiff alleged that Hyman transferred the Vehicle to

7

Greenbrier on or about September 7, 2005, either failing to comply with the disclosure requirements of § 32705 completely (2d Am. Compl. ¶ 17d) or after falsifying documents, including the odometer disclosure statement (2d Am. Compl. ¶ 18). In its response, Plaintiff contends that a Maryland repair shop "readily" discovered that the vehicle was stolen "during a routine check." (Pl.'s Resp. to Def. Hyman's Mot. to Dismiss Pl.'s 2d Am. Compl. 1.) (Docket No. 106.) Although Plaintiff failed to allege these specific facts in his Complaint, see ¶ 36-40, Plaintiff's allegations sufficiently state a plausible claim that a reasonable dealer should have known about the incorrect odometer and cloned nature of the VIN. Because violators of the Federal Odometer Act may be held liable to an eventual purchaser despite intervening violators, and liability is imposed upon each person in the chain of sales, Plaintiff may state a claim against Hyman even though Hyman did not sell the car directly to Plaintiff. *See Stier v. Park Pontiac, Inc.*, 391 F. Supp. 397, 401 (S.D. W. Va. 1975); *Aldridge v. Billips*, 656 F. Supp. 975, 978-80 (W.D. Va. 1987) (granting summary judgment to vehicle purchaser against, *inter alia*, defendant dealership that had failed to complete a transfer of title after taking possession of title and selling the vehicle shortly thereafter, indicating "a rash disregard for the proper steps required for completion of a certificate of title"). Hyman's Motion to Dismiss Count One will be DENIED.

B. **Count Two: Virginia Consumer Protection Act**

Count Two alleges that the Dealers violated the VCPA, Va. Code § 59.1-196 *et seq.* Paragraph 76 of the Second Amended Complaint states that the Dealers' alleged misrepresentations run afoul of certain provisions of Section 59.1-200 of the Code of Virginia, which prohibits:

> 5. Misrepresenting that goods or services have certain qualities, characteristics, ingredients, uses, or benefits;
> 6. Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;
> 7. Advertising or offering for sale goods that are used, secondhand, repossessed, defective, blemished, deteriorated, or reconditioned . . . without clearly and unequivocally indicating in the advertisement or offer for sale that the goods are used, secondhand, repossessed, defective, blemished, deteriorated, [or] reconditioned . . . ;
> 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised. . . .
>    . . . .
> 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction . . . .

Va. Code § 59.1-200. Specifically as to section 59.1-200(14), Plaintiff alleges that the Dealers violated the VCPA:

> a. by misrepresenting to the Plaintiff that it had clear, valid title to the Vehicle;
> b. by misrepresenting the accurate mileage on the Vehicle;
> c. by failing to inform the Plaintiff that the car was stolen;
> d. by misrepresenting the accurate vehicle identification number to the Vehicle on the sales documents;
> e. by providing the Plaintiff with a Carfax for the Vehicle that was false and/or misleading;
> f. by misrepresenting to the Plaintiff that it was the owner of the Vehicle; and
> g. by misrepresenting to the Plaintiff that it had the legal right to sell the Vehicle.

(2d Am. Compl. ¶ 77.) Clearly, allegations a, c, e, f, and g pertain to Greenbrier's conduct toward the Plaintiff, rather than specific wrongdoing by Hyman or the other Dealers. However, in the context of the facts alleged, allegations (b) as to inaccurate mileage and (d) as to an inaccurate VIN can be viewed as relating to Hyman's sale of the Vehicle to Greenbrier using an inaccurate odometer disclosure statement, as part of the "misrepresentations." (2d Am. Compl. ¶ 25.)

9

The VCPA pertains to "consumer transaction[s]," see Va. Code § 59.1-200(A), which the statute defines as "[t]he . . . sale . . . of goods or services to be used primarily for personal, family or household purposes." Va. Code § 59.1-198. Plaintiff has pleaded sufficient facts that he purchased the car for personal use. (*See, e.g.*, 2d Am. Compl. ¶ 33 (stating that Plaintiff purchased wheel rims, a television, and a radio for the Vehicle for $11,100.00).) At least one Virginia court has ruled that "lack of privity is not available as a defense" in claims properly brought by consumers under the VCPA. *Merriman v. Auto Excellence, Inc.*, 55 Va. Cir. 330, *available at* 2001 WL 1763982, at *1 (Va. Cir. Ct. 2001) (denying defendant's demurrer and motion to dismiss, where defendant was one of three car dealers in a chain of sellers before the ultimate seller sold the vehicle to plaintiffs, rejecting argument that "a transaction between dealers does not fall within the purview of the Virginia Consumer Protection Act").

To state a claim under the VCPA, a plaintiff must allege "that the defendant acted with an intent to deceive or otherwise mislead, *i.e.*, with fraudulent intent, as to a material fact on which the plaintiff relied to his detriment *and* which resulted in measurable damages." *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005). "The misrepresentations providing the basis of a VCPA claim need not be pled with the same kind of particularity as common law fraud claims." *Nigh*, 143 F. Supp. 2d at 553. Plaintiff has alleged that Hyman, along with the other Dealers, acted with a fraudulent intent as to title documents and odometer disclosure statements. Plaintiff alleges detrimental reliance, resulting in his loss of both the Vehicle and his trade-in vehicle. Such allegations withstand a motion to dismiss, and Hyman's Motion to Dismiss will be DENIED as to Count Two.

### C. Counts Three and Four: Fraud and Constructive Fraud

Unlike Counts One and Two, which rely on statutes that courts have specifically found privity between the plaintiff and a party in the chain of sellers unnecessary, no comparable analysis exists to create a basis for holding Hyman liable for misrepresentations that allegedly occurred between Greenbrier and Plaintiff.

To sustain a claim of actual or constructive fraud, a plaintiff must plead "a false representation of a material fact; made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; reliance on that false representation to [his or her] detriment; and resulting damage." *Klaiber v. Freemason Assocs.*, 587 S.E.2d 555, 558 (2003) (*citing Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (1994)). The heightened pleading standard of Fed. R. Civ. P. 9(b) applies to Counts Three and Four. The Court finds that Plaintiff has failed to allege with the requisite specificity that Hyman intentionally or negligently made a false representation of fact on which Plaintiff relied. Rather, Plaintiff relied on misrepresentations made to him by Greenbrier.

Moreover, Plaintiff's Second Amended Complaint does not indicate whether Hyman "falsified . . . documents, including the odometer disclosure statement" (2d Am. Compl. ¶ 18), or failed entirely to title the Vehicle (2d Am. Compl. ¶17d). Plaintiff has not identified any individual at Hyman who perpetrated the alleged fraud. *Cf. Hamlett v. Va. Vascular Assocs.*, 61 Va. Cir. 468, *available at* 2003 WL 22382792, at *3 (Va. Cir. Ct. 2003) (sustaining demurrer to actual and constructive fraud claims for lack of specificity where plaintiffs failed to identify the agents, officers, or employees of defendant that allegedly perpetrated the fraud). The Second Amended Complaint does not state how Hyman knew or should have known that it was making

11

misrepresentations about the Vehicle. The Court will GRANT Hyman's Motion to Dismiss Counts Three and Four, and Plaintiff's claims against Hyman for fraud and constructive fraud under Virginia law will be DISMISSED.

### D. Count Seven: Intentional Infliction of Emotional Distress

Count Seven alleges that "[t]he acts of the Dealers . . . were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiff and/or were done in reckless disregard of the probability of causing Plaintiff emotional distress, and . . . did in fact result in severe and extreme emotional distress." (2d Am. Compl. ¶ 125.)

To state a claim for intentional infliction of emotional distress under Virginia law, a plaintiff must allege that: (1) "the wrongdoer's conduct was intentional or reckless," (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality," (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress," and, (4) "the emotional distress was severe." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). Because the tort of intentional infliction of emotional distress is "not favored" under Virginia law, a high standard for pleading such a claim exists. *See Contreras v. Thor Norfolk Hotel, L.L.C.*, 292 F. Supp. 2d 798, 803 (E.D. Va. 2003); *Dixon v. Denny's*, 957 F. Supp. 792, 796 (E.D. Va. 1996) (*citing Ruth v. Fletcher*, 377 S.E.2d 412, 415 (1989)).

As to the first consideration under *Womack*, Plaintiff has alleged that the Dealers' conduct generally was intentional or reckless. (2d Am. Compl. ¶ 125.) Plaintiff makes no specific allegations against Hyman as to this claim. Second, courts describe outrageous or

intolerable conduct as conduct "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991) (quotation omitted). Whether Hyman's alleged statutory violations rise to such a level is questionable. Third, Plaintiff fails to allege a causal connection between *Hyman's* conduct and his emotional injury. As the court in *Contreras* noted, in Virginia, "[o]n those occasions when courts have found the plaintiff's pleadings of this tort sufficient to reach a jury, the plaintiff is inevitably the *direct target* of the challenged conduct." 292 F. Supp. 2d at 804 (alteration in original). Plaintiff makes no suggestion or allegation that Hyman targeted him to purchase a stolen vehicle.

Finally, as to the fourth *Womack* factor, severity of the emotional distress, Plaintiff alleges that he "has sustained serious and permanent injury, including but not limited to pain and suffering, mental anguish and emotional distress, . . . serious financial hardship, attorney fees and costs and other damages to be proven at trial." (2d Am. Compl. ¶ 126.) He alleges that he suffered "emotional distress, humiliation, mental anguish, shock, distress, fright, anxiety, shame, apprehension and nervousness" as a result of his car being seized as stolen and his being questioned by police and threatened with arrest in connection with that event. (2d Am. Compl. ¶ 127.) Although he alleges tangible monetary loss, Plaintiff's allegations do not rise to the level needed to state a claim for intentional infliction of emotional distress because the monetary damages would be otherwise available and the emotional damages do not rise to the requisite level of severity. *See Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007) (allegations of professional counseling and incapability of performing work or family responsibilities

insufficient); *Russo*, 400 S.E.2d at 163; *Dixon*, 957 F. Supp. at 796 (making findings on summary judgment).

Because Plaintiff has not alleged a plausible claim for intentional infliction of emotional distress by Hyman, Hyman's Motion to Dismiss Count Seven will be GRANTED, and Count Seven will be DISMISSED as to Hyman.

### E. Count Nine: Negligence

Count Nine presents the alternative cause of action of negligence, alleging that "the collective actions of the Dealers constitute negligence." (2d Am. Compl. ¶ 137.)

To state a claim for negligence, a plaintiff "must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." *Weiss v. Cassidy Dev. Corp.*, 61 Va. Cir. 237, *available at* 2003 WL 1563425, at *5 (Va. Cir. Ct. 2003) (*citing Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (2000)); *see also Blue Ridge Serv. Corp. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006).

Plaintiff has alleged a discrete injury. Plaintiff alleges generally that the Dealers' actions proximately caused that injury. However, Plaintiff did not specify a duty owed by Hyman to Plaintiff. Plaintiff suggests that its negligence claim flows from the alleged violations of the Federal Odometer Act. (Pl.'s Resp. to Def. Hyman's Mot. to Dismiss Pl.'s 2d Am. Compl. 10.) (Docket No. 106.)

Plaintiff's invocation of the alleged violations of the Federal Odometer Act suggests that Plaintiff's negligence claim hangs on a negligence *per se* theory. "To state a cause of action for Negligence *per se*, plaintiff must allege that the defendant violated a statute enacted for public safety; that the plaintiff belongs to the class of persons for whose benefit the statute was enacted;

14

that the harm that occurred was the type against which the statute was designed to protect; and that the statutory violation was the proximate cause of plaintiff's injury." *Weiss*, 2003 WL 1563425, at *5 (*citing Halterman v. Radisson Hotel Corp.*, 523 S.E.2d 823, 282 (Va. 2000). Neither party has sufficiently addressed whether an alleged violation of the Federal Odometer Act can support a negligence *per se* cause of action under the law. Because the Federal Odometer Act incorporates an intent to defraud, it is not clear a violation of this statute supports such a negligence claim. Nonetheless, Hyman's Motion to Dismiss Count 9 will be DENIED at this juncture.

## IV. Conclusion

For the foregoing reasons, the Court shall GRANT IN PART and DENY IN PART Defendant Hyman's Motion to Dismiss Plaintiff's Second Amended Complaint. (Docket No. 79.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 8-7-09